**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **KEVIN LAWLER AND TRACY LAWLER** | **JURY TRIAL DEMANDED** |
| | **CIVIL ACTION NO:** |
| **Plaintiffs,** | |
| **v.** | |
| **FAY SERVICING, LLC** | **MARCH 23, 2026** |
| **Defendant.** | |

## COMPLAINT

Plaintiffs Kevin and Tracy Lawler, through their attorneys, file this Complaint against Defendant Fay Servicing, LLC ("Defendant" or "Fay Servicing") and in support thereof allege as follows:

### INTRODUCTION

1. This is an action for damages, costs, and attorney's fees arising out of Defendant's unfair, deceptive, and reckless servicing of Mr. and Mrs. Lawler's loan, misconduct which has persisted from at least June 2020 until present day. Mr. and Mrs. Lawler seek relief pursuant to the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601, *et seq.* ("RESPA") and the regulations promulgated thereunder ("Regulation X"), the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq*. ("CUTPA"), and breach of contract.

### JURISDICTION AND VENUE

2. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 as the parties are citizens of diverse states and the amount in controversy exceeds $75,000.

3. The Court also has subject matter jurisdiction pursuant to 12 U.S.C. § 2614 and 28

U.S.C. § 1331 as Count II of this action arises under RESPA.

4. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state law claims under Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.* and breach of contract.

5. Venue in this District is proper as Mr. and Mrs. Lawler reside in Enfield, Connecticut.

6. Defendant transacts business within the State of Connecticut, and the conduct complained of occurred in this District.

## PARTIES

7. Mr. and Mrs. Lawler are natural persons pursuant to CUTPA, Conn. Gen. Stat. § 42-110a(3).

8. Defendant Fay Servicing, LLC is a Delaware corporation engaged in the business of servicing mortgage loans in Connecticut, with its principal place of business located at 5426 Bay Center Drive, Suite 300, Tampa, FL 33609.

9. Mr. and Mrs. Lawler's loan is a federally related mortgage as defined by 12 U.S.C. § 2602(1) in that the loan is secured by a first lien on a one-family unit of residential real property and was made by a lender satisfying the requirements of 12 U.S.C. § 2602(1)(B)(i).

10. Defendant is the servicer of the Lawlers' mortgage for the purposes of 12 U.S.C. § 2605.

## FACTUAL ALLEGATIONS

11. Mr. and Mrs. Lawler own a single home at 8 Eastgate Lane, Enfield, Connecticut 06082.

12. Mr. and Mrs. Lawler became the sole owners of the home on August 8, 1995, and remain the sole owners to the present day.

13. Defendant serviced Mr. and Mrs. Lawler's mortgage at all relevant times.

14. Defendant is subject to mortgage servicing rules promulgated by the Consumer Financial

Protection Bureau (CFPB) under RESPA and Regulation X.

15.    In or about August 2019, the Lawler household was struggling. Given an unexpected job loss and college bills for their children, the Lawlers missed several mortgage payments.

**Fay Retroactively Changed the Lawlers' Monthly Mortgage Payment.**

16.    The Lawlers requested mortgage assistance from Fay, and in June 2020 the parties entered into a loan modification that reinstated their mortgage. A copy of the loan modification agreement is attached hereto as Exhibit 1.

17.    From July 2020 until February 2023, the Lawlers paid the amount called for in every single statement they received from Fay.

18.    Then in February 2023, Fay declared it had been sending incorrect statements to the Lawlers for nearly three years.

19.    Defendant unilaterally decided to reapply the Lawlers' history of payments retrospectively, changing old balances to make it appear as though the Lawlers had intentionally underpaid their monthly statements for more than two years, despite having previously reported them as "current."

20.    Mr. Lawler contacted Defendant to dispute its claim that they had underpaid the mortgage over three years. He pointed to the 2020 loan modification agreement, which set their monthly payment at $1,730.24, the exact amount they had been paying since June 2020.

21.    Defendant refused to accept responsibility for its error and demanded the Lawlers immediately pay $18,961.00 to bring their account current, an amount that was not actually due and was caused by Defendant's own servicing errors.

**Defendant Started a Wrongful Foreclosure Against the Lawlers.**

22.    On June 22, 2023, Defendant commenced a foreclosure against Mr. and Mrs. Lawler in

Connecticut Superior Court.

23. The parties participated in the state-sponsored foreclosure mediation program from September 2023 till March 2024.

**The Parties Entered into a Deferment Agreement and Fay Withdrew the Foreclosure.**

24. In mediation, Fay admitted its error in servicing the Lawlers' mortgage and the parties entered into a loan deferment agreement effective February 1, 2024, which deferred the Lawlers' mortgage arrearage of $39,864.00 (the "Agreement"). The Loan Deferment Agreement is attached hereto as Exhibit 2.

25. Fay agreed to accept payment in full of the $39,864.00 on the maturity date set forth in the parties' original note and mortgage or as amended thereafter.

26. The parties agreed that the mortgage interest rate would remain at 4% and Fay would waive all default-related fees caused by the error and resulting foreclosure.

27. Fay also agreed to correct the credit reporting it had submitted to the credit reporting agencies related to Lawlers' mortgage to reflect that it was paid-as-agreed from June 2020 till January 2024.

28. The Lawlers made their February, March, and April 2024 payments in the amount of $1,849.57, by calling Fay and submitting the payments over the phone.

29. On April 22, 2024, Fay withdrew its foreclosure action against the Lawlers.

30. In May 2024, Mr. Lawler noted that his credit report had been updated to reflect his mortgage as current from June 2020 through December 2023.

31. Additionally, Fay deleted the credit reporting entries for the Lawlers' mortgage for February 2023 through December 2023.

**Fay Immediately Put the Lawlers Back into Default.**

32. However, Fay reported the Lawlers' mortgage as delinquent beginning in January 2024, despite receiving each monthly mortgage payment under the parties' Loan Deferment Agreement.

33. Starting in February 2024, the same month the parties entered into the Agreement, the Lawlers began receiving collection calls from Fay indicating that their monthly payment was past due and was $2,004.52, not the $1,849.57 indicated in the parties' Agreement.

**The Lawlers Sent Fay a Notice of Error Under RESPA.**

34. On or about May 31, 2024, Mr. Lawler sent Fay a qualified written request (QWR), notice of error, and request for information pursuant to RESPA, and notified Fay that its assertion of a missed January 2024 payment was incorrect, as no payment was due that month under the Loan Deferment Agreement.

35. The first payment due pursuant to the Agreement was in February 2024.

36. Mr. Lawler also requested Fay update their account information to reflect that they are not responsible for a January 2024 payment.

37. Lastly, Mr. Lawler requested a complete account payment history, communication logs or notes regarding their account, and all other documents in their servicing file.

**Fay Responded to the Notice of Error and Admits Error.**

38. On August 12, 2024, Fay responded and admitted that the January 2024 payment was included in the deferment and the Lawlers' first payment under the Agreement was due February 1, 2024. A copy of Fay's August 12, 2024 response is attached hereto as Exhibit 3.

39. Fay further confirmed that it received payments of $1,849.57, from the Lawlers in February, March, and April 2024, but they were "insufficient to satisfy the monthly contractual

5

payment of $2,004.52," so Fay applied the payments to a non-interest-bearing suspense account instead of to their monthly payments.

40. Fay explained that the "payment increase was a result of the escrow analysis that was previously completed on October 9, 2023." See Exhibit 3.

41. Until this letter, Fay never notified the Lawlers of this payment increase, not when the parties entered into the Loan Deferment Agreement in February 2024, nor at any time thereafter.

42. Fay did not provide the Lawlers with the communication logs or notes regarding their account they requested in the QWR.

**The Lawlers Started Making Payments in the New Amount Demanded by Fay**.

43. To appease Fay, Mr. Lawler started making monthly payments of $2,004.52, starting in May 2024 and continuing through October 2024, when Fay refused and then returned his payment.

44. On September 12, 2024, Fay sent the Lawlers a notice of default instructing them to submit a payment of $10,570.63 by November 16, 2024, to avoid foreclosure.

45. On or about September 27, 2024, Mr. Lawler called Fay to inquire about this notice and to make his monthly mortgage payment, since Fay had revoked his access to their online mortgage account.

**Fay Started Refusing the Lawlers' Mortgage Payments**.

46. On that day, Fay informed Mr. Lawler that his loan was 87 days past due. The Fay representative then refused to take his October 2024 mortgage payment over the phone.

47. Mr. Lawler sent his October 2024 payment via paper check and Fay returned it to him weeks later.

6

**Fay Started a Second Wrongful Foreclosure Against the Lawlers.**

48.  On December 17, 2024, after Fay refused three of his payments, Mr. Lawler sent Fay a second QWR, notice of error, and request for information pursuant to RESPA.

49.  Fay received the second QWR on December 2, 2024, and responded on January 21, 2025.

50.  Fay reiterated the explanation it had provided the Lawlers in its August 12, 2024 response, but failed to explain how a three-month shortage of only $154.95 per month (for February, March, and April 2024) could result in an alleged arrearage of $10,570.63. A copy of Fay's January 21, 2025 response is attached hereto as Exhibit 4.

51.  On March 25, 2025, Fay filed a second wrongful foreclosure against the Lawlers.

**Fay's Conduct Harmed the Lawlers.**

52.  As a result of Fay's actions and inactions, Mr. and Mrs. Lawler have suffered actual damages including but not limited to late fees, property inspection fees, attorney's fees and costs related to two improper foreclosure actions, and other default-related costs and fees.

53.  As a further result of Fay's inaccurate servicing and reporting of the Mr. and Mrs. Lawlers' mortgage as delinquent and/or in default, they were denied Parent PLUS loans for their child's college expenses, causing financial harm.

54.  As a result of Fay's actions and inactions, Mr. and Mrs. Lawler have suffered and continue to suffer considerable emotional distress regarding the status of their mortgage and the potential of losing their home. For over three years, Mr. and Mrs. Lawler have experienced and continue to experience anxiety, depression, hopelessness, frustration, helplessness, and shame.

55.  Mr. and Mrs. Lawler have been bullied and harassed for years by Defendant, and despite their attempts to resolve multiple payment discrepancies caused by Fay itself, they are experiencing the anguish of facing foreclosure again.

56. Mr. and Mrs. Lawler have feared and continue to fear homelessness after years of having to deal with both threats of foreclosure and foreclosure actions from Fay. They fear answering the phone and the door because of Fay's threats. They have also experienced a loss of stability in their home life, an inability to make long-term plans, marital strain, family strain, and significant humiliation and reputational damage in their community because of Fay's conduct.

57. As a result of Fay's conduct, Mr. Lawler began experiencing physical manifestations of emotional distress including developing a stress-induced break out of hives, interrupted sleep, headaches, high blood pressure, and panic attacks.

58. Mrs. Lawler also experienced physical manifestations of emotional distress including insomnia and concentration loss.

## CLAIMS FOR RELIEF

### COUNT I

### BREACH OF CONTRACT

59. Plaintiffs incorporate by reference the allegations in Paragraphs 1-50, as if fully set forth herein.

60. At all relevant times, Plaintiffs and Defendant were parties to valid and enforceable agreements governing Plaintiffs' mortgage loan, including the note and mortgage, as modified by the June 2020 loan modification agreement, and as further supplemented by and/or amended by the Loan Deferment Agreement effective February 1, 2024. See Exhibit 2.

61. The Agreement was entered into after Defendant admitted error in its servicing of the Plaintiffs' mortgage and after Defendant had wrongfully treated Plaintiffs' loan as delinquent despite years of payments made in the amounts Defendant billed and accepted.

62. Under the Deferment Agreement, Defendant agreed, inter alia, that:

a. Plaintiffs' mortgage arrearage in the amount of $39,864.00 would be deferred;

b. Defendant would accept payment in full of that deferred amount on the maturity date set forth in the original note and mortgage, or as amended thereafter;

c. The mortgage interest rate would remain at 4%; and

d. That following the deferment of the arrearage, the loan would be due for the February 1, 2024 contractual monthly installment.

63. Additionally, on December 19, 2023, while in mediation, the parties agreed that Defendant would waive all default-related fees associated with the servicing errors and resulting foreclosure and would correct credit reporting related to Plaintiffs' mortgage to reflect that the loan was paid as agreed from June 2020 through January 2024. A copy of the Mediator's Report for this session is attached hereto as Exhibit 5.

64. Plaintiffs performed their obligations under the Deferment Agreement.

65. Specifically, Plaintiffs made their February, March, and April 2024 monthly mortgage payments in the amount of $1,849.57, consistent with the Deferment Agreement and the information provided by Defendant at the time.

66. Thereafter, in an effort to avoid further dispute and appease Defendant, Mr. Lawler made monthly payments in the increased amount demanded by Defendant, $2,004.52, beginning in May 2024 and continuing through October 2024, until Defendant refused and returned his payment.

67. Plaintiffs remained ready, willing, and able to continue making monthly mortgage payments, but Defendant refused to accept one or more such payments and returned at least one payment tendered by paper check.

68. Defendant materially breached the Deferment Agreement by, among other things:

a. treating Plaintiffs as delinquent for a January 2024 payment that was included in the deferment;

b. failing to properly implement and honor the Deferment Agreement after admitting

that January 2024 was deferred and that the first payment due under the Agreement was February 1, 2024;

c. failing to properly apply Plaintiffs' monthly mortgage payments in accordance with the Deferment Agreement;

d. placing Plaintiffs' timely payments into a suspense account rather than crediting them to amounts due under the loan;

e. demanding amounts allegedly due that were inconsistent with the terms of the Deferment Agreement and/or not properly disclosed to Plaintiffs;

f. issuing a notice of default notwithstanding Plaintiffs' compliance with the Deferment Agreement;

g. refusing to accept Plaintiffs' monthly mortgage payments;

h. returning one or more mortgage payments tendered by Plaintiffs;

i. furnishing and/or failing to correct derogatory credit reporting inconsistent with the Deferment Agreement;

j. commencing a second foreclosure action based on a purported default caused in whole or in part by Defendant's own failure to implement and honor the Deferment Agreement; and

k. k. otherwise failing to perform its obligations under the Deferment Agreement.

69. Defendant's breaches were material and deprived Plaintiffs of the benefit of their bargain under the Deferment Agreement.

70. As a direct and proximate result of Defendant's breaches, Plaintiffs suffered damages, including but not limited to:

a. improper default and delinquency treatment on their mortgage loan;

b. wrongful collection activity and foreclosure-related harm;

c. damage to their credit reputation and creditworthiness;

d. denial of credit and interference with their ability to obtain financing, including denial of a Parent PLUS loan;

e. out-of-pocket expenses incurred in attempting to correct Defendant's errors;

10

f.  lost time and opportunity spent addressing Defendant's servicing misconduct; and

g.  additional compensatory and consequential damages to be proven at trial.

71.  Plaintiffs have satisfied all conditions precedent to Defendant's performance under the Deferment Agreement, or any such conditions were waived, excused, or prevented by Defendant's conduct.

72.  By reason of the foregoing, Plaintiffs are entitled to recover damages from Defendant Fay Servicing.

## COUNT II

### VIOLATION OF RESPA AND REGULATION X, 12 C.F.R §§ 1024.35 AND 1024.36

73.  Plaintiffs incorporate by reference the allegations in Paragraphs 1-71, as if fully set forth herein.

74.  At all relevant times, Plaintiffs were borrowers on a federally related mortgage loan secured by their principal residence located at 8 Eastgate Lane, Enfield, Connecticut 06082.

75.  At all relevant times, Defendant Fay Servicing, LLC was the servicer of Plaintiffs' mortgage loan within the meaning of RESPA, 12 U.S.C. § 2605(i), and Regulation X, 12 C.F.R. part 1024.

76.  As the mortgage servicer, Defendant was required to comply with RESPA and Regulation X, including but not limited to the duties imposed by 12 C.F.R. §§ 1024.35 and 1024.36 to reasonably investigate notices of error, correct servicing errors, and provide requested information relating to the servicing of Plaintiffs' loan.

77.  On or about May 31, 2024, Plaintiff Kevin Lawler sent Defendant a qualified written request, notice of error, and request for information concerning the servicing of Plaintiffs' mortgage loan.

11

78. In that correspondence, Mr. Lawler notified Defendant, inter alia, that Defendant had incorrectly asserted that Plaintiffs owed a January 2024 mortgage payment, even though no payment was due in January 2024 under the parties' Loan Deferment Agreement and the first payment due under that Agreement was February 1, 2024.

79. Mr. Lawler further requested that Defendant correct its account records to reflect that Plaintiffs were not responsible for a January 2024 payment and that Defendant provide a complete payment history, communication logs and account notes, and other documents and information contained in Plaintiffs' servicing file.

80. Defendant acknowledged receipt of Plaintiffs' May 31, 2024 correspondence in its subsequent written response.

81. On or about August 12, 2024, Defendant responded in writing to Plaintiffs' May 31, 2024 notice of error and request for information.

82. In its August 12, 2024 response, Defendant admitted that the January 2024 payment was included in the deferment and that Plaintiffs' first payment under the Loan Deferment Agreement was due February 1, 2024.

83. Notwithstanding that admission, Defendant failed to timely and adequately correct the servicing errors identified by Plaintiffs.

84. Instead, Defendant continued to treat Plaintiffs' loan as delinquent, continued to maintain inaccurate account information, continued to assert that Plaintiffs' February, March, and April 2024 payments were insufficient, and continued to place those payments into a suspense account rather than applying them to Plaintiffs' monthly mortgage obligations.

85. Defendant further asserted that the Lawlers' monthly contractual payment had increased to $2,004.52 based on an escrow analysis, but failed to adequately explain how that alleged

increase justified Defendant's delinquency determinations, suspense-account treatment, asserted arrearage, and default-related conduct.

86. Defendant also failed to adequately provide the requested information relating to the servicing of Plaintiffs' mortgage loan, including communication logs or notes regarding their account, and a complete and intelligible explanation of its payment application, delinquency determinations, suspense-account treatment, and calculation of the amounts Defendant claimed were due.

87. Thereafter, despite Plaintiffs' written notice and despite Defendant's own admission that no January 2024 payment was due, Defendant continued its servicing misconduct by, among other things, demanding amounts not properly due, treating Plaintiffs' loan as delinquent, furnishing and/or maintaining derogatory delinquency reporting, revoking Plaintiffs' online account access, refusing or returning Plaintiffs' mortgage payments, issuing a notice of default, and ultimately commencing a second foreclosure action against Plaintiffs.

88. On or about December 17, 2024, Mr. Lawler sent Defendant a second written qualified written request, notice of error, and request for information pursuant to RESPA and Regulation X.

89. In that correspondence, Plaintiffs again disputed Defendant's servicing of the loan, including Defendant's treatment of their payments, the alleged delinquency, the asserted arrearage, and Defendant's refusal to accept payments, and again requested information relating to the servicing of the loan.

90. Defendant acknowledged receipt of Plaintiffs' second written notice in its written response.

91. On or about January 21, 2025, Defendant responded to Plaintiffs' second notice of error and request for information.

13

92. Defendant's response to Plaintiffs' second notice again failed to reasonably investigate and correct the servicing errors identified by Plaintiffs.

93. Defendant reiterated its prior explanation concerning an escrow analysis and claimed payment increase, but failed to adequately explain how the alleged payment discrepancy for a limited number of months could result in the arrearage, delinquency, and default status Defendant asserted against Plaintiffs.

94. Defendant further failed to adequately explain the manner in which it applied Plaintiffs' payments, calculated the alleged arrearage, justified its refusal and return of Plaintiffs' payments, or reconciled its own admission that no January 2024 payment was due with its continuing treatment of Plaintiffs' loan as delinquent.

95. Defendant violated RESPA and Regulation X, including 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.35 and 1024.36, in one or more of the following ways:

a. failing to conduct a reasonable investigation of Plaintiffs' asserted servicing errors;

b. failing to timely correct servicing errors relating to the amount due, due dates, delinquency status, payment application, suspense-account treatment, and account balance;

c. failing to provide an adequate written explanation stating the reasons Defendant determined no error occurred, where Defendant failed to meaningfully address the errors identified by Plaintiffs;

d. failing to provide requested information relating to the servicing of Plaintiffs' loan, including a complete and intelligible payment history, servicing notes, communication logs, and an adequate explanation of the account;

e. continuing to furnish, maintain, or rely upon inaccurate servicing information after receiving Plaintiffs' notices of error;

f. continuing collection and foreclosure-related conduct based on known and uncorrected servicing errors; and

g. otherwise failing to comply with its duties under RESPA and Regulation X.

96.     As a direct and proximate result of Defendant's violations of RESPA and Regulation X, Plaintiffs suffered actual damages, including but not limited to: damage to their creditworthiness and credit reputation, denial of credit and interference with their ability to obtain financing, out-of-pocket expenses incurred in preparing and mailing written disputes and following up on Defendant's errors, lost time spent attempting to correct Defendant's servicing misconduct, foreclosure-related harm including late fees, property inspection fees, and attorney's fees and costs, and severe emotional distress, including physical manifestations of that distress as described in paragraphs 53-57, above.

97.     Defendant's violations were part of a pattern or practice of noncompliance with the requirements of RESPA and Regulation X, entitling Plaintiffs to statutory damages pursuant to 12 U.S.C. § 2605(f), as evidenced by, among other things, Defendant's repeated failure to correct known servicing errors, repeated misapplication of payments, repeated inaccurate delinquency treatment, repeated inadequate responses to Plaintiffs' written notices, refusal of payments, and initiation of foreclosure proceedings despite admitted servicing error.

98.     As a result of Defendant's violations, Plaintiffs are entitled to recover actual damages, statutory damages, costs, and reasonable attorneys' fees pursuant to 12 U.S.C. § 2605(f).

## COUNT III

### UNFAIR ACTS OR PRACTICES
### Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. § 42-110a *et seq.*

99.     Plaintiffs reincorporate the allegations in paragraphs 1-97 as if fully incorporated herein.

100.  Defendant's actions were taken in the conduct of trade or commerce within the State of Connecticut, as defined in Conn. Gen. Stat. § 42-110a(3).

101.   Defendant has engaged in unfair acts or practices within the meaning of Conn. Gen. Stat. § 42-110b(a). Defendant's conduct violated public policy, was unfair, unethical, oppressive, and unscrupulous, and caused substantial injury to Plaintiffs.

102.   Defendant's conduct offends public policy as established by RESPA, 12 U.S.C. § 2601 et seq., and Regulation X, 12 C.F.R. §§ 1024.35 and 1024.36, which are intended to ensure that mortgage borrowers receive timely, accurate information about the servicing of their loans and meaningful responses to servicing disputes.

103.   As alleged in Count II, Defendant failed to conduct a reasonable investigation in response to Plaintiffs' notices of error and failed to provide complete, accurate, and intelligible information concerning Plaintiffs' mortgage account in response to their requests for information.

104.   Defendant's conduct further offended public policy by misapplying or failing to properly apply Plaintiffs' mortgage payments, placing timely payments into suspense, falsely treating Plaintiffs' loan as delinquent, refusing and returning mortgage payments, maintaining inaccurate account information, and pursuing foreclosure based on a default of Defendant's own making.

105.   Defendant's conduct was unfair, immoral, unethical, oppressive, and unscrupulous, including when it:

    a.   retroactively recharacterized and reapplied the Lawlers' payment history to make it appear that they had underpaid their mortgage for years, despite previously billing and reporting them as current;

    b.   demanded that Plaintiffs immediately pay a large lump sum to bring the account current after Defendant's own servicing error;

    c.   commenced a foreclosure action against Plaintiffs based on payment discrepancies caused by Defendant's own servicing misconduct;

    d.   admitted servicing error in foreclosure mediation, entered into the February 1, 2024 Loan Deferment Agreement, and then failed to properly implement and honor that

agreement;

e.  falsely treated Plaintiffs as delinquent beginning in January 2024 even though Defendant later admitted that no January 2024 payment was due under the Deferment Agreement;

f.  asserted that Plaintiffs' monthly payment had increased to $2,004.52 without adequately explaining the basis for that increase at the time it began treating the loan as delinquent;

g.  placed Plaintiffs' February, March, and April 2024 payments into suspense or otherwise misapplied them rather than applying them to the loan;

h.  continued collection efforts and delinquency treatment after Plaintiffs disputed the errors in writing;

i.  failed to provide complete, accurate, and intelligible information in response to Plaintiffs' written notices of error and requests for information;

j.  revoked Plaintiffs' access to their online mortgage account;

k.  refused to accept Plaintiffs' mortgage payments by phone;

l.  returned Plaintiffs' mortgage payment sent by paper check;

m.  issued a notice of default based on an arrearage Defendant failed to adequately explain or justify;

n.  furnished and/or maintained inaccurate derogatory credit reporting concerning Plaintiffs' mortgage loan; and

o.  commenced a second foreclosure action against Plaintiffs based on a purported default caused in whole or in part by Defendant's own conduct.

106.   Defendant's actions caused substantial injury to Plaintiffs that they could not reasonably avoid.

107.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs suffered actual damages, including but not limited to:

a.  wrongful default-related charges and foreclosure-related expenses;

b.  damage to their credit reputation and creditworthiness;

   c.   denial of credit and interference with their ability to obtain financing, including denial of a Parent PLUS loan for their child's college expenses;

   d.   out-of-pocket costs incurred in attempting to correct Defendant's errors;

   e.   lost time spent disputing Defendant's servicing misconduct and attempting to save their home; and

   f.   emotional distress and physical manifestations of distress arising from Defendant's conduct.

108.  As a further direct and proximate result of Defendant's wrongful conduct, Plaintiffs suffered anxiety, humiliation, frustration, fear of losing their home, strain on their marriage and family life, and physical symptoms including insomnia, headaches, panic, hives, fatigue, and other stress-related manifestations as fully detailed in paragraphs 53-57.

## COUNT IV

**Intentionally or Recklessly Unfair Acts or Practices**
**Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. § 42-110a, et seq.**

109.  Plaintiffs reincorporate the allegations in paragraphs 1-108 as if fully incorporated herein.

110.  Defendant's conduct, as alleged above, was not merely mistaken or negligent, but intentional, willful, wanton, malicious, or in reckless disregard of Plaintiffs' rights and interests.

111.  Defendant knew, or recklessly disregarded, that it had caused or contributed to the payment discrepancies and default status it attributed to Plaintiffs.

112.  Defendant admitted during foreclosure mediation that it had erred in servicing Plaintiffs' mortgage, entered into the Loan Deferment Agreement to resolve that misconduct, and then nevertheless continued to treat Plaintiffs as delinquent almost immediately thereafter.

113.  Defendant further admitted in its August 12, 2024 written response that no January 2024 payment was due under the Deferment Agreement and that Plaintiffs' first payment under

18

that agreement was due February 1, 2024, yet continued to maintain delinquency status, place payments into suspense, demand improperly inflated sums, and pursue collection and foreclosure activity.

114.    After receiving two written notices of error and requests for information from Plaintiffs, Defendant still failed to meaningfully correct the account, failed to provide a coherent explanation for the asserted arrearage and default, refused and returned payments, and proceeded toward foreclosure.

115.    Defendant knowingly or recklessly misrepresented Plaintiffs' account status, knowingly or recklessly failed to correct inaccurate account records and derogatory credit reporting, and knowingly or recklessly pursued foreclosure remedies based on a default Defendant knew or should have known was not validly stated.

116.    Defendant's conduct was willful, wanton, malicious, reckless, immoral, oppressive, unethical, and unscrupulous.

117.    As a direct and proximate result of Defendant's intentionally or recklessly unfair acts or practices, Plaintiffs suffered the damages set forth above.

118.    Defendant's intentional or reckless misconduct entitles Plaintiffs to punitive damages in addition to actual damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

Plaintiffs Kevin and Tracy Lawler respectfully request that judgment be entered against

Defendants for the following:

    i.     Actual damages, compensatory damages, and costs and reasonable attorney's fees pursuant Conn. Gen. Stat. § 42-150bb to as to Count I;

    ii.    Actual damages, statutory damages, and attorney's fees pursuant to 12 U.S.C. § 2605(f) as to Count II;

    iii.   Actual damages, compensatory damages, and attorney's fees, pursuant to Conn. Gen. Stat. § 42-110g(a) and (d), as to Counts III and IV;

    iv.   Punitive damages as to Count IV pursuant to Conn. Gen. Stat. § 42-110g(a);

    v.    Such other and further relief as the Court deems just and proper.

THE PLAINTIFFS
KEVIN AND TRACY LAWLER

/s/ Loraine Martinez Bellamy
Loraine Martinez Bellamy (ct29220)
Connecticut Fair Housing Center
60 Popieluszko Court
Hartford, CT  06106
T: (860) 263-0732
F: (860) 247-4236
lmartinez@ctfairhousing.org